Filed 1/9/15; unmodified opn. attached

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D064995 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SF113576) |
| LUIS RAMON APARICIO, | ORDER MODIFYING OPINION |
| Defendant and Appellant. | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on January 5, 2015, be modified as follows:

The paragraph commencing at the bottom of page 4 with "The Supreme Court" and ending at the top of page 5 with "petition is appealable" is deleted.

There is no change in the judgment.

McINTYRE, Acting P. J.

Copies to: All parties

Filed 1/5/15 opn. on rehearing (unmodified version)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D064995 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SF113576) |
| LUIS RAMON APARICIO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, David J. Danielsen, Judge. Affirmed.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry J. Carlton and Warren J. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

In this case, we hold that the abuse of discretion standard applies when reviewing an appeal from a trial court's denial of a petition for resentencing under Penal Code section

1170.126 based on the trial court's finding that release of the petitioner would present an unreasonable risk of danger to public safety. (Undesignated statutory references are to the Penal Code.) We found no abuse of discretion and affirmed the order.

Appellant subsequently sought rehearing arguing section 1170.18, effective November 5, 2014, as part of Proposition 47 (the Safe Neighborhoods and Schools Act) changed the definition of "unreasonable risk of danger to public safety" as it applies to inmates petitioning for recall of their third-strike life sentence under section 1170.126. (See Cal. Const., art. II, § 10, subd. (a) ["An initiative statute or referendum approved by a majority of votes thereon takes effect the day after the election unless the measure provides otherwise."].) We decline to address this new issue and affirm the order without prejudice to appellant petitioning for relief from the superior court under section 1170.18.

FACTUAL AND PROCEDURAL BACKGROUND

In March 1985, a juvenile court found true the allegation that Luis Ramon Aparicio committed battery with serious bodily injury after he dislocated the victim's nose by pushing the victim's head onto concrete. Aparicio was 15 years old at the time. In August 1986, Aparicio attacked a victim with a knife. In October 1988, Aparicio suffered his first strike conviction for robbery when he and three cohorts robbed two victims of their stereos. During the struggle, one of the assailants stabbed one of the victims. Aparicio was sentenced to 365 days in jail and three years of formal probation, but probation was ultimately revoked and he was sentenced to three years in prison.

In June 1989, Aparicio suffered his second strike conviction after he pleaded guilty to attempted robbery after trying to rob three victims with an ice pick. While fleeing the scene,

2

Aparicio's vehicle struck another vehicle and he was later found to be under the influence of a controlled substance. He received a two-year prison sentence. In 1992, Aparicio received a three-year prison term for possessing PCP and marijuana. In 1996, Aparicio was convicted of battery and resisting a police officer. He received probation, but probation was later revoked. In 1997, Aparicio was convicted of his commitment offense after burglarizing a car. During the reading of his guilty verdict, Aparicio attacked a marshal and attempted to remove his gun. He received a 27-years-to-life prison sentence under the Three Strikes Law.

Aparicio received nine write-ups while incarcerated. In February 1998, he received administrative punishment after pinching a female prison employee on the buttocks and grabbing her thigh. In June 1998, he headbutted another inmate. In October 1998, he flooded his cell. In February 1999, he flooded his cell and threw urine at an officer. In December 2000, he obstructed a peace officer by refusing to accept a new cellmate. In 2001, 2005 and 2007, he engaged in mutual combat with other inmates. In November 2012, he stole desserts from the dining hall.

A psychologist examined Aparicio. She found that he suffered from antisocial personality disorder and posed a low-moderate risk of committing a future violent offense. Nonetheless, she concluded that Aparicio did not pose an unreasonable risk to public safety if released. In November 2013, the trial court denied Aparicio's petition for recall of sentence after reviewing the petition, Aparicio's criminal history, prison history and mental health evaluation. Aparicio timely appealed.

DISCUSSION

I. *General Legal Principles*

"On November 6, 2012, voters approved Proposition 36, the Three Strikes Reform Act of 2012 (the Act)." (*People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1285 (*Kaulick*).) The Act provides a means whereby prisoners currently serving sentences of 25 years to life for a third felony conviction, which was not a serious or violent felony, may seek court review of their indeterminate sentences and, under certain circumstances, obtain resentencing as if they had only one prior serious or violent felony conviction and was thus a second-strike, rather than a third-strike, offender. (*Id.* at p. 1286.)

If the inmate satisfies the statutory criteria and is eligible for resentencing (§ 1170.126, subds. (e), (f)), the trial court "shall" resentence the inmate "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) "In exercising its discretion in subdivision (f), the court may consider: [¶] (1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.126, subd. (g).)

The Supreme Court is considering whether the denial of a section 1170.126 petition is an appealable order. (*Teal v. Superior Court* (2013) 217 Cal.App.4th 308, review

4

granted July 31, 2013, S211708 [not appealable]; *People v. Hurtado* (2013) 216 Cal.App.4th 941, review granted July 31, 2013, S212017 [appealable].) The People did not raise this issue, impliedly conceding the denial of a resentencing petition is appealable. Given this implied concession, we will assume without deciding that the denial of a resentencing petition is appealable.

## II. *Standard of Review*

The parties dispute what standard of review we apply when reviewing a trial court's dangerousness finding under section 1170.126. Aparicio asserts we should review the matter de novo because the issue presents a mixed question of law and fact. The People assert the statutory language compels an abuse of discretion standard, and even assuming the statutory language does not control and the issue is a mixed question of law and fact, de novo review is not necessary because the determination of dangerousness does not affect fundamental constitutional rights. We agree with the People.

Subdivision (f) of section 1170.126 provides that if the statutory criteria are satisfied, the petitioner shall be resentenced "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." Subdivision (g) of section 1170.126 sets forth a number of factors the court "may consider" in "exercising its discretion" and gives the court additional discretion to consider any other evidence it determines to be relevant. When interpreting a voter initiative, our primary purpose is to ascertain and effectuate the voters' intent. (*People v. Park* (2013) 56 Cal.4th 782, 796.)

5

Here, section 1170.126 expressly gives a trial court discretion in making a dangerousness finding and broad discretion in what factors to consider in making this finding. Aparicio even concedes the statutory language "suggest[s] a deferential abuse of discretion standard of review [is] appropriate." Notably, subdivision (f) could have been drafted to eliminate a court's use of discretion, for example, "the petitioner shall be resentenced . . . unless [] resentencing the petitioner would pose an unreasonable risk of danger to public safety." Because the statute expressly states that a court exercises discretion in making a dangerousness finding, we review this finding for abuse of discretion.

To avoid this common sense result, Aparicio argues a dangerousness finding under section 1170.126 presents a mixed question of law and fact reviewed de novo because it is primarily a legal determination regarding whether the undisputed facts meet the requirements of the statute rather than a credibility determination regarding those facts. While we agree the dangerousness finding under section 1170.126 can be classified as a mixed question of law and fact, we conclude that application of fact to law in this instance requires an inquiry that is essentially factual which we review for an abuse of discretion.

"Mixed questions of law and fact concern the application of the rule [of law] to the facts and the consequent determination whether the rule is satisfied. If the pertinent inquiry requires application of experience with human affairs, the question is predominantly factual and its determination is reviewed under the substantial-evidence test. If, by contrast, the inquiry requires a critical consideration, in a factual context, of legal principles and their underlying values, the question is predominantly legal and its

6

determination is reviewed independently."  (*Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888.)  Classification of the dangerousness finding as a mixed question of law and fact, however, does not determine our standard of review.  Rather, to determine the standard of review, we must focus "on the nature of the inquiry required when we apply the relevant rule of law to the facts as established."  (*United States v. McConney* (9th Cir.1984) 728 F.2d 1195, 1204 (*McConney*).)

In *McConney*, the Ninth Circuit developed a functional analysis as a guide to selecting the proper standard of review for mixed questions.  (*McConney*, *supra*, 728 F.2d at p. 1204.)  Our high court has found the *McConney* analysis helpful in deciding the proper standard of review for mixed questions.  (*People v. Cromer* (2001) 24 Cal.4th 889, 899.)  The *McConney* court noted three steps exist in deciding mixed fact-law questions, establishing the facts, selecting the applicable rule of law and applying the law to the facts.  (*McConney*, at p. 1200.)  The standards of review for the first two steps are well settled, questions of fact are reviewed for substantial evidence and questions of law are reviewed de novo.  (*Id.* at pp. 1200-1201; *People v. Mickey* (1991) 54 Cal.3d 612, 649 [questions of fact subject to review for substantial evidence is equivalent to federal "clearly erroneous" scrutiny].)

What standard of review operates when reviewing a trial court's application of the law to the facts is more troublesome.  The *McConney* court noted the issue may be determined by reference to the sound principles underlying settled rules of appellate review.  (*McConney*, *supra*, 728 F.2d at p. 1202.)  "If the concerns of judicial administration—efficiency, accuracy, and precedential weight—make it more appropriate

7

for a [trial] judge to determine whether the established facts fall within the relevant legal definition, we should subject his determination to deferential, [substantial evidence] review. If, on the other hand, the concerns of judicial administration favor the appellate court, we should subject the [trial] judge's finding to de novo review. Thus, in each case, the pivotal question is do the concerns of judicial administration favor the [trial] court or do they favor the appellate court." (*Ibid.*)

Here, there is no dispute as to the facts or the law. Aparicio appears to argue that application of the facts to the law presents a mixed fact-law question and thus the default standard of review is de novo. Our high court, however, has rejected this approach. In *People v. Ault* (2004) 33 Ca1.4th 1250, our high court addressed the mixed fact-law question whether juror misconduct was so prejudicial as to warrant a new trial under the abuse of discretion standard, concluding that de novo review need not apply even if the prejudice issue was a mixed question of law and fact. (*Id.* at p. 1255.) In rendering its decision, our high court noted several considerations influenced the standard of review, including the importance of the legal rights at stake and the consequences of an erroneous determination in the particular case. (*Id.* at pp. 1265-1266.)

Applying these considerations, we note that the resentencing permitted by section 1170.126, is not constitutionally required, "but an act of lenity on the part of the electorate." (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1304.) A trial court is confronted with the task of deciding a recall of sentence petition only after the petitioner has been convicted and sentenced for the commitment offense. If a trial court makes an erroneous

determination on the recall petition, the consequences are not dire as the petitioner must serve his or her existing sentence.

A dangerousness determination is not rooted in constitutional principles and policies, does not require that a trial court consider abstract legal doctrines, weigh underlying policy considerations or balance competing legal interests. (*McConney*, *supra*, 728 F.2d at p. 1205.) Rather, a dangerousness determination is essentially a factual inquiry guided by a trial court's review of the petitioner's criminal conviction history, disciplinary record and record of rehabilitation while incarcerated, and any other evidence the court in its discretion determines relevant. (§ 1170.126, subd. (g).) Because the trial court is vested with broad discretion in making the determination and in what evidence it considers, the question whether a petitioner poses an unreasonable risk of danger to public safety is likely to be highly fact dependent, rendering such decisions of little precedential value in other cases with different fact patterns. The limited precedential value of such decisions, each of which stands upon its own facts, reduces the need for de novo review. (*McConney*, at p. 1201.) For these reasons, we hold that a trial court's determination of whether a section 1170.126 petitioner poses an unreasonable risk of danger to public safety is examined for an abuse of discretion.

Aparicio's comparison of a dangerousness finding under section 1170.126 with a determination of factual innocence under section 851.8 is inapposite. If a person is arrested and charged with a crime, but the case is later dismissed, the arrestee may petition for a finding that he or she is factually innocent of the charges. (§ 851.8, subd. (c).) The arrestee may be found factually innocent if "no *reasonable cause* exist[ed] to believe that

9

the arrestee committed the offense for which the arrest was made."  (§ 851.5, subd. (b), italics added.)

In *People v. Adair* (2003) 29 Cal.4th 895 (*Adair*), our high court addressed a split of authority whether a finding under section 851.5 is reviewed de novo or for substantial evidence.  (*Id.* at p. 902.)  The *Adair* court noted that despite the fact-intensive nature of the inquiry, the statutory language required de novo review because "reasonable cause" is a well-established legal standard "'"defined as that state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime."'"  (*Id.* at p. 904.)  Accordingly, it concluded that the statutory scheme established an objective legal standard for assaying factual innocence on both trial and appellate courts that "d[id] not accommodate any exercise of discretion to which the appellate court should defer."  (*Id.* at p. 909.)  In contrast, the standard presented under section 1170.126, whether a petitioner poses an "unreasonable risk of danger to public safety," is not a well-established legal standard and the statute expressly provides the trial court with discretion in making the determination and discretion in what evidence it may consider in making the determination.  (§ 1170.126, subds. (f), (g).)

Finally, citing a footnote in *Kaulick*, the People argue the highly deferential "some evidence" standard of review applies and we should uphold a denial order if some evidence supported the trial court's determination that an inmate petitioning under section 1170.126 posed an unreasonable risk of danger to the public.  (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1306, fn. 29.)  We disagree.

10

First, the People misread the footnote in *Kaulick*. The footnote at issue preceded the court's conclusion that a petitioner is not denied equal protection if the dangerousness finding under section 1170.126 is made under less than the beyond a reasonable doubt standard of proof. (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1305-1306.) In support of its finding that no equal protection violation existed, the footnote noted that a decision denying an inmate parole need only be supported by some evidence. (*Id.* at p. 1306, fn. 29.) The footnote states that the denial of parole and the denial of a petition for recall of sentence are similar because a denial under both "simply means that the inmate remains subject to his initial sentence unless certain findings are made; these findings need not be established beyond a reasonable doubt." (*Ibid.*) The footnote does not suggest that dangerousness determinations under section 1170.126 should be reviewed under the "some evidence" standard of review.

Second, the "some evidence" standard of review applies to the review of a Board of Parole Hearings or Governor's decision to grant parole to an inmate serving an indeterminate sentence, "a decision vested in the executive branch, under our state Constitution and statutes." (*In re Shaputis* (2011) 53 Cal.4th 192, 198-199.) As part of the judicial branch of government, courts may be called upon to review an executive branch parole suitability determination to ensure that the determination is not arbitrary or capricious (*id.* at p. 199), the court's review, however, is limited and highly deferential. (*Ibid.*) As our high court has cautioned, "[i]ntrusions by the judiciary into the executive branch's realm of parole matters may violate the separation of powers." (*In re Prather* (2010) 50 Cal.4th 238, 254-255; cf. *In re Dikes* (2004) 121 Cal.App.4th 825, 829 [because

11

the Legislature granted the Department of Corrections broad authority for the discipline of inmates in state prisons, we uphold any Department disciplinary decision that is supported by some evidence].)  Our review of a trial court's dangerousness finding under section 1170.126 does not implicate separation of powers issues and does not require the highly deferential some evidence standard of review.

### III.  *Analysis*

Aparicio does not dispute his nine in-custody violations during his 16 years in prison.  He contends the trial court erred in denying his petition because other factors "weigh[ed]" in his favor including, completing his GED, perfecting office skills, remaining gang free while in prison, and participating in Narcotics and Alcoholics Anonymous meetings and classes on alternatives to violence.  We review the trial court's determination for abuse of discretion with the burden on the party attacking the sentence to show the decision was "so irrational or arbitrary that no reasonable person could agree with it."  (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

Aparicio is a career criminal whose life of crime started in 1985 when he committed a battery resulting in serious bodily injury when he was 15 years old.  The following year, he attacked a person with a knife.  In 1988, at age 19, he suffered his first strike conviction for robbery.  He suffered his second strike conviction for robbery the following year.  Thereafter, he was in and out of jail until he suffered his third strike conviction in 1997.  The psychological evaluator commented that Aparicio "reported limited use of alcohol and drugs," but noted that substance abuse "was a factor in at least two arrests, suggesting a more extensive substance abuse history."

12

While incarcerated, Aparicio was not a model prisoner. He suffered nine write-ups from 1998 to 2012, including three for mutual combat with other inmates. The evaluator expressed concern about Aparicio's failure to take full responsibility for his actions and tendency to minimize either the seriousness of his past actions or the harm caused to his victims. She noted that Aparicio frequently attributed responsibility to circumstances or other people, and this pattern applied to his most recent offense while incarcerated when Aparicio stated he believed he was allowed to take food.

Aparicio can be commended for obtaining his GED, participation in vocational programs and membership in the Buddhist Meditative Program. We note, however, it was only within the last four years that Aparicio started to regularly attend Alcoholics and Narcotics Anonymous meetings and that he did not complete an alternatives to violence program until 2011. Aparicio's efforts to address his substance abuse and violent tendencies are relatively recent when viewed in terms of his extensive and continuous criminal history and length of incarceration. Accordingly, we conclude the trial court did not abuse its discretion when it denied Aparicio's petition.

In any event, even if we were to apply a de novo standard of review, we would find that Aparicio is still a work in progress and resentencing was properly denied because he remains an unreasonable risk of danger to public safety. As the trial court noted, Aparicio's efforts will "bear fruit when he's considered for release on parole."

IV. *Issue on Rehearing*

Proposition 47 created a new resentencing provision, section 1170.18, under which certain individuals may petition the superior court for a recall of sentence and request

13

resentencing.  (§ 1170.18, subd. (a).)  Aparicio argues that he qualifies for resentencing under section 1170.18 and the definition of "unreasonable risk of danger to public safety" contained in Proposition 47 governs the identical section 1170.126 standard.  (§ 1170.18, subd. (c).)  He also argues section 1170.18 is retroactive and the new definition necessarily governs any pending appeal of a section 1170.126 denial.  He asks that we remand the matter to the superior court to either grant his resentencing petition or conduct a new hearing to determine whether he constitutes an unreasonable risk to public safety under the new standard.

We requested supplemental briefing addressing whether (1) the superior court has the authority to grant relief under Proposition 47 without further action by this court, and (2) the issues raised in the petition for rehearing are more appropriately presented to the superior court in the first instance.  Both parties submitted supplemental briefing, which we have considered.

We acknowledge the two issues argued by Aparicio present questions of law which we have discretion to consider.  (*Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417 [a reviewing court has discretion to decide such an issue if it presents a pure question of law arising on undisputed facts, particularly when the issue is a matter of important public policy]; see e.g., *People v. Chaney* (2014) 231 Cal.App.4th 1391 [ruling that the definition of "unreasonable risk of danger to public safety" in Proposition 47 does not apply retroactively to a defendant whose petition for resentencing under the Three Strikes Reform Act of 2012 was decided before the effective date of Proposition 47]; *People v. Valencia* (Dec. 16, 2014, F067946) ___ Cal.App.4th ___ [2014 Cal.App. Lexis 1149] [ruling that section 1170.18, subdivision (c), enacted under Proposition 47, does not modify section

14

1170.126, subdivision (f)].) Nonetheless, we decline to decide these legal issues. Proposition 47 requires the filing of a petition for recall under section 1170.18, subdivision (a). Aparicio may file the appropriate petition and the superior court must decide the threshold question whether he is eligible for resentencing.

## DISPOSITION

The order is affirmed without prejudice to appellant petitioning for relief from the superior court under section 1170.18.

McINTYRE, J.

WE CONCUR:

BENKE, Acting P. J.

IRION, J.